UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YAK ACCESS, LLC, et al., | ) | CASE NO. 5:23-cv-212 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CREEKSIDE LANDFILL, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is plaintiffs' motion to remand. (Doc. No. 8, Motion.) Defendant filed a memorandum in opposition (Doc. No. 11, Opposition), and plaintiffs filed a reply (Doc. No. 13, Reply). For the reasons set forth herein, the motion is granted, and this action is remanded to Stark County Court of Common Pleas.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On January 9, 2023, plaintiffs Yak Access, LLC ("Yak Access") and Klein's Restoration Services, LLC ("Klein's RS") (together "plaintiffs") filed an action in Stark County Court of Common Pleas against defendant Creekside Landfill, LLC ("Creekside" or "defendant"). (Doc. No. 1-1, Complaint.) Plaintiffs asserted four causes of action against Creekside: (1) breach of contract; (2) unjust enrichment; (3) account; and (4) declaratory judgment—all based on the following factual allegations.

Plaintiffs allege that, on or about September 8, 2021, Yak Access and Creekside entered into an agreement for certain work to be performed for Creekside. (*Id*. ¶ 7.) A copy of the agreement is attached to the complaint and is incorporated by reference. (*Id*., Ex. A Construction

Agreement, at 7–8.[1]) That copy shows that the agreement was actually between Klein's RS and Creekside. Plaintiffs allege that, although they performed under the agreement, Creekside has refused to pay two invoices (for $26,244.00 and $20,584.50), totaling $46,828.50. (*Id*. ¶¶ 9–11; *see also* Exs. B & C.) In causes of action one, two and three, plaintiffs allege that, by refusing to pay for work performed, Creekside has either breached the parties' agreement or unjustly enriched itself; plaintiffs seek an accounting and damages.

In their fourth cause of action, plaintiffs seek a declaratory judgment that they were entitled to deposit and retain the proceeds of a certain insurance check in the amount of $85,438.67, subject to set-off in the amount of $46,828.50 for Creekside's unpaid invoices, with the balance going to Creekside. (*See id*. ¶¶ 22–31.) The insurance payment resulted from damage to a vehicle that occurred on October 6, 2021 at Creekside's worksite; the truck had been rented by Creekside from RECO Equipment, but was being operated by Klein's RS at the time. (*Id*. ¶ 23.) Plaintiffs submitted a claim to their insurer, which eventually issued the referenced check, payable to *both* Yak Access and Creekside. (*Id*. ¶ 25.) Because plaintiffs believed Creekside owed them for work reflected on the two unpaid invoices, without Creekside's knowledge of the check and without its permission or signature, plaintiffs "deposited the check . . . , and offered [Creekside] the difference, which [Creekside] refused to accept." (*Id*. ¶ 29.) Plaintiffs "request a declaratory judgment . . . finding that [they] are entitled to set off the amount of the unpaid invoices, and the amount of [some] preexisting damage to the hood of the truck, from the amount claimed by [Creekside]." (*Id*. ¶ 31.)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

On February 3, 2023, Creekside removed the action to this Court on the basis of diversity jurisdiction. (Doc. No. 1, Notice of Removal.) On February 10, 2023, Creekside answered the complaint and filed its own five-count counterclaim: two counts of conversion (one against each plaintiff); two counts of unjust enrichment (one against each plaintiff); and one count of breach of contract (against the two plaintiffs). (Doc. No. 7, Answer and Counterclaim.) Four of Creekside's counterclaims are based upon plaintiffs allegedly "wrongfully transferring the insurance check or its proceeds, and/or withholding the insurance check or its proceeds from Creekside[.]" (*Id*. ¶ 43; *see also* ¶¶ 48, 52–54, 64–66.) Creekside's fifth counterclaim asserts that plaintiffs breached the agreement between the parties by failing to maintain the required general liability insurance that would have held Creekside harmless for any damage to and/or rental costs for the rental truck. (*Id*. ¶¶ 58–59.) Instead, Creekside was allegedly invoiced by RECO Equipment in the amount of $99,854.10 for the cost of repairing the truck, plus $40,540.50 for rental charges owed by Creekside from the time the truck was damaged until the time it was repaired (*Id*. ¶ 34), a total of $140,394.60.

On February 14, 2023, plaintiffs filed the instant motion to remand, asserting that the jurisdictional amount in controversy was not satisfied. (Doc. No. 8.)

## II. DISCUSSION

### A. Legal Standard on a Motion to Remand

Under 28 U.S.C. § 1441(a), removal of a case is permitted for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" District courts have original jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). The removing party bears the burden of establishing jurisdiction, *Eastman*

3

*v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), and that question "is determined at the time of removal[.]" *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). "[The Supreme] Court has long held that a district court, when determining whether it has original jurisdiction over a civil action, should evaluate whether that action could have been brought originally in federal court." *Jefferson Cap. Sys., LLC v. Alveranga*, No. 1:20-cv-990, 2020 WL 6685304, at *3 (N.D. Ohio Nov. 12, 2020). Thus, "a counterclaim is irrelevant to whether the district court [has] 'original jurisdiction' over the civil action." *Home Depot U.S.A., Inc. v. Jackson*, -- U.S. --, 139 S. Ct. 1743, 1748, 204 L. Ed. 2d 34 (2019). Further, "the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction[,]" *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (citations omitted).

Here, there is no dispute that the parties, all of whom are limited liability companies, are completely diverse.[2] (*See* Doc. No. 1 ¶¶ 6–13.) The challenge to removal is based on an alleged failure to show that "the matter in controversy exceeds the sum or value of $75,000[.]" 28 U.S.C. § 1332(a)(1).

---

[2] The citizenship of a limited liability company is that of its members and sub-members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citation omitted). Klein's RS is a "wholly owned subsidiary of Yak Access. LLC, a Mississippi limited liability company." (Doc. No. 1-1 ¶ 3.) Yak Access, LLC has one member: Platinum Equity Advisors, LLC, which itself has one member: Platinum Equity, LLC, which also has one member: the "Gores Trust dated January 26, 1999, as amended." (Doc. No. 1 ¶¶ 8–10.) "[A] business trust has the citizenship of its trustees." *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002) (citations omitted). The co-trustees of the Gores Trust are Tom Gores and Holly Gores, who are both domiciled in California. (Doc. No. 1 ¶ 11.) Creekside's only member is Hainesport Holding, LLC, which itself has two members: Ronald Bridges and Darryl Caplan. "State citizenship [of natural persons] for the purpose of the diversity requirement is equated with domicile." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (citations omitted). Bridges and Caplan are domiciled, respectively, in Pennsylvania and New Jersey. (Doc. No. 1 ¶ 12.)

To meet its burden of proving jurisdiction on the question of the amount in controversy, a defendant "need only show that it is more likely than not that the plaintiff's claims exceed $75,000." *Halsey v. AGCO Corp.*, 755 F. App'x 524, 527 (6th Cir. 2018) (internal quotation marks and citations omitted); *see also* 28 U.S.C. § 1446(c)(2) (deeming "the sum demanded in good faith in the initial pleading . . . [to be] the amount in controversy").

Where an action seeks declaratory relief, "'it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). The Sixth Circuit has said that, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is . . . the value of the consequences which may result from the litigation.'" *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975)); *see also Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970) ("[I]n injunction actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented.").

**B. Analysis**

Creekside's notice of removal asserts that the jurisdictional amount in controversy is satisfied by the allegations of the complaint because the insurance check that is referenced in count four of the complaint was for the amount of $85,438.67. Creekside asserts that because plaintiffs seek both "a declaratory judgment concerning the propriety of . . . Yak Access's conduct" with respect to that check and to "eliminate uncertain[t]y as to the disposition of the insurance

proceeds," (Doc. No. 1 ¶ 16), this is the amount that constitutes "the value of the object of the litigation[]" (*id*. ¶ 14), for purposes of the amount in controversy.

In its opposition to the motion to remand, Creekside also attempts to bootstrap the damages it seeks from plaintiffs for an alleged breach of contract (for failure to obtain general liability insurance) to the amount of the insurance check to satisfy the amount in controversy. Creekside claims that the $140,394.60 it seeks in its breach of contract counterclaim against plaintiffs is the "amount claimed by [d]efendant[]" in ¶ 31 of plaintiffs' complaint. (Doc. No. 11, at 2.) The Court rejects this attempt to bootstrap. First, the amount in controversy is determined based on the complaint at the time of removal and does not include any amounts in a counterclaim. Second, the "amount claimed by [d]efendant[]" that is referenced in the complaint, read in its proper context, is referring to the amount claimed by defendant as its share of the insurance proceeds from the check allegedly wrongfully retained by plaintiffs.

Here, looking only at the complaint at the time of removal, as the Court must do, it is clear that plaintiffs are seeking to recover the $46,828.50 that they claim is due from Creekside on two invoices. Even the declaratory judgment claim of the plaintiffs, when read closely, does not seek a judgment that plaintiffs were entitled to keep *all* of the insurance proceeds (which arguably would have been sufficient to meet the amount in controversy for removal); rather, that count makes clear that plaintiffs seek a declaratory judgment that they were entitled to deposit the insurance check, to set-off the unpaid invoices, and to give Creekside "the difference" (which plaintiffs identify in their reply as $38,610.17 (Doc. No. 13, at 1) and which Creekside has apparently refused to accept). Plaintiffs seem to also be claiming some additional, unspecified amount for "preexisting damage" to the truck's hood (*see* Doc. No. 1-1 ¶¶ 24, 31), but whatever that amount may be, it would not be sufficient to boost the $46,828.50 up to the jurisdictional

6

amount of $75,000. The burden would be on Creekside to show otherwise and it has not even attempted to do so.

The Court concludes that plaintiffs' complaint at the time of removal does not seek damages sufficient to satisfy the jurisdictional amount in controversy.

That said, even if that conclusion is incorrect and plaintiffs' declaratory judgment claim is sufficient on its facts to raise the amount in controversy to the jurisdictional amount, then the Court would exercise is significant discretion to decline jurisdiction over the fourth claim in the complaint.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As pointed out by the Sixth Circuit: "That 'may' goes a long way—it gives district courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Banks Eng'g, Inc. v. Nationwide Mut. Ins. Co.*, No. 21-5652, 2022 WL 203332, at *2 (6th Cir. Jan. 24, 2022) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995))).

In this case, plaintiffs are seeking to recover unpaid invoices under a contract. The declaratory judgment claim addressing the propriety of plaintiffs' treatment of insurance proceeds to satisfy that alleged "debt" is little more than the "tail wagging the dog"—especially if it were to be used to convert a simple state law dispute into one over which this Court would have original jurisdiction. Plaintiffs' treatment of the insurance check is conceptually a separate dispute. Even without the declaratory judgment claim, plaintiffs have the potential to fully recover on their two

7

unpaid invoices and any other damages they may be seeking on their contract and quasi-contract claims. In that regard, the declaratory judgment claim is superfluous.

Further, from the standpoint of having one's "day in court," the issues raised in the declaratory judgment claim are adequately addressed in Creekside's counterclaim. The declaratory judgment claim in the complaint is unnecessary and may, in fact, muddy the waters of the "amount in controversy" analysis. The "value"—or lack thereof—of the declaratory judgment claim is better seen from Creekside's viewpoint. Even if plaintiffs cannot establish any entitlement to have kept the insurance check, subject to setoff for the invoices, that does not mean they cannot recover the same amount of damages on another theory. Therefore, the declaratory judgment claim may have more "value" to Creekside than to plaintiffs.[3] Creekside's counterclaim could be read to suggest that, because it claims damages in excess of $140,000, plaintiffs were not entitled to keep *any portion* of the insurance proceeds.

Therefore, if, as argued by Creekside (but rejected by the Court), the complaint's declaratory judgment claim *alone* is sufficient to satisfy the amount in controversy, then this Court would be well within its significant discretion to dismiss that claim from the complaint (and it would do so). Instead, the Court determines that the complaint, with all four of its causes of action, fails to meet the jurisdictional amount in controversy, rendering removal improper and requiring remand.

---

[3] Notably, "[t]he Sixth Circuit 'has yet to decide whether [it] view[s] the amount in controversy from the perspective of the plaintiff or the defendant.'" *McIlvaine, Inc. v. Seymour Transp., Inc.*, No. 5:12-cv-2726, 2013 WL 5670955, at *3 (N.D. Ohio Oct. 16, 2013) (quoting *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 n.1 (6th Cir. 2009) (further citations omitted)). But, given this Court's significant discretion when it comes to exercising jurisdiction over declaratory judgment actions, that need not be decided.

### III. CONCLUSION

For the reasons set forth herein, plaintiffs' motion to remand is granted. This case is remanded to Stark County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: June 12, 2023

                                             **HONORABLE SARA LIOI**
                                             **UNITED STATES DISTRICT COURT**
                                             **CHIEF JUDGE**